[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 224.]

CINCINNATI BAR ASSOCIATION *v*. FARR.

[Cite as *Cincinnati Bar Assn. v. Farr*, 1995-Ohio-308.]

*Attorneys at law—Misconduct—Indefinite suspension—Engaging in conduct prejudicial to the administration of justice—Engaging in conduct that adversely reflects on fitness to practice law—Practicing in violation of professional regulations requiring registration and continuing legal education—Neglecting an entrusted legal matter—Failing to carry out contract for employment—Failing to keep client's funds separate from attorneys funds.*

(No. 94-2663—Submitted February 7, 1995—Decided May 24, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-26.

———————————

{¶ 1} In an amended complaint filed on August 23, 1993, relator, Cincinnati Bar Association, charged respondent, Richard Reagan Farr of Cincinnati, Ohio, Attorney Registration No. 0041061, with five counts of misconduct involving violations of DR 3-101(B) (practicing in violation of professional regulations requiring registration and continuing legal education), 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(2) (failing to carry out contract for employment), 9-102(A)(2) (failing to keep client's funds separate from attorney's funds), and 1-102(A)(5) and (6) (engaging in conduct prejudicial to the adminstration of justice and that adversely reflects on fitness to practice law). A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on October 28, 1994.

{¶ 2} Respondent did not formally answer the amended complaint, but he appeared at the hearing and admitted his record of professional discipline,

including, among others, a sanction and subsequent suspension as of June 18, 1993 for his failure to comply with continuing legal education ("CLE") requirements and a fine for failing to register as an attorney for the 1991-1993 biennium. Respondent has since complied or otherwise resolved his noncompliance with the registration and CLE requirements, and his suspension was vacated in August 1994.

{¶ 3} Respondent also admitted most of the facts and some of the misconduct alleged in the amended complaint. First, he conceded that he accepted final payment of fees and costs for a dissolution of marriage for Anthony and Diane Hensley in March 1992, and that Mr. Hensley filed a grievance with relator when he could no longer reach respondent by telephone. Respondent could not recall whether he falsely represented to Mr. Hensley in June 1992 that he had filed the dissolution papers; however, respondent acknowledged that he did not file the papers until February 18, 1993, after he received notice of the grievance.

{¶ 4} Second, respondent admitted that, in January 1993, Leslie Moutoux-Barnhill paid him four hundred fifty dollars in advance to handle her divorce. She also filed a grievance with relator when she could no longer reach him by telephone. Respondent had been paid in full, but he did not file the necessary papers in court, and he did not arrange for another attorney to do so until his client complained to relator.

{¶ 5} Third, respondent admitted that between September 1, 1991 and his suspension on June 18, 1993, he continued to practice law, although he had not complied with CLE and registration requirements. He had no office during this time and his personal telephone was disconnected on more than one occasion. Respondent did not have then and still has no malpractice insurance, and he regularly combined and continues to combine his personal funds with those of his clients. As of April 1, 1993, respondent did not know the balance of the account in which he had deposited his clients' funds because an acqaintance had withdrawn money with checks stolen from respondent.

2

**{¶ 6}** Fourth, respondent admitted that he failed to cooperate in the investigation of the Hensley grievance. He ignored a subpoena for his appearance at a deposition, he did not respond in writing to the grievance, as requested, and he cancelled meetings he had previously agreed to attend.

**{¶ 7}** Fifth, respondent admitted that he considers himself an alcoholic and has had this problem at least since 1973. He has been hospitalized several times for this disease, most recently in July and August 1993. Respondent's attributes much of his delay in the Hensley and Moutoux-Barnhill cases to his alcoholism, and he claims it also impeded his resolve to comply with attorney registration and CLE requirements.

**{¶ 8}** With respect to misconduct, respondent admitted that he had violated DR 3-101(B), as charged in Count I of the amended complaint; that he had violated DR 6-101(A)(3) and 7-101(A)(2) in the course of representing Moutoux-Barnhill, as charged in Count III; and that his alcoholism had prejudiced his clients' interests in violation of DR 1-102(A)(5), as charged in Count V. The panel accordingly found that these violations had occurred. It also concluded that respondent had violated DR 6-101(A)(3) and 7-101(A)(2), in failing to file the Hensley dissolution papers, as charged in Count II, and that he had violated DR 9-102(A)(2) in failing to preserve the identity of his clients' funds and to establish the interest-bearing trust account required by R.C. 4705.09, as charged in Count IV.

**{¶ 9}** Finally, the panel found that respondent's alcoholism had caused violations of DR 1-102(A)(6) in connection with the Hensley and Moutoux-Barnhill cases, as further charged in Count V. This determination resulted from respondent's testimony about his years of alcohol abuse, which he described as "going down the highway in low gear." During the events at issue, he was evicted from at least one residence and spent several periods attempting to "dry-out" in various health care facilities. Respondent described himself as a maintenance alcoholic who drank all day long. Each day during 1992 and 1993, he would drink

around eighteen beers, three liters of wine, or a bottle of diluted vodka, if he could afford it. Despite this consumption, he claimed that he could usually organize himself enough to make court appearances; however, he conceded he could not get other things accomplished, such as filing the papers his clients requested.

{¶ 10} In recommending a sanction for respondent's misconduct, the panel considered that in August 1993, respondent had successfully completed a four-week substance abuse program at Cincinnati Veterans Medical Center. Respondent represented that he had been sober for the year or so since that time and that he had attended Alcoholics Anonymous ("AA") meetings on a fairly regular basis. The panel was troubled, however, that he had drunk around five or six beers during his most recent recovery period and that he had represented that he had been abstinent in order to obtain a disability exemption for his 1989-1993 CLE requirements. Moreover, respondent had not spoken to his AA sponsor in several weeks and had not established contact with the Ohio Lawyers Assistance Program, Inc. ("OLAP").

{¶ 11} The panel was additionally concerned about respondent's complete lack of understanding of the importance of establishing a client trust account and keeping client funds separate from his own.

{¶ 12} However, the panel was also impressed with respondent's completion of the substance abuse program, his current and continuing severe financial problems, and his determination to regain his good standing to practice law and to find employment. Further, the panel noted the lack of demonstrable prejudice to either of respondent's clients—he eventually filed the Hensley dissolution petition and Moutoux-Barnhill's divorce was filed by another attorney. The panel thus accepted, with some modification, relator's recommendation that respondent be issued a two-year suspension, and that the suspension to be suspended on conditions mainly designed to monitor and ensure respondent's abstemious practice of law. The board adopted the panel's findings of misconduct and its recommendation.

---

*Richard H. Johnson*, *Stephen M. Nechemias*, and *Ann Lugbill*, for relator.

*Richard Reagan Farr*, pro se.

---

**Per Curiam.**

{¶ 13} We agree that respondent violated DR 1-102(A)(5) and (6), 3-101(B), 6-101(A)(3), 7-101(A)(2), and 9-102(A)(2), as found by the board. However, we cannot allow respondent's immediate return to to practice law, even under the comprehensive conditions the board has recommended.

{¶ 14} Respondent has attempted rehabilitation on several occasions, including one time in 1990, in which he claims to have abstained from alcohol for ten months. This history manifests his propensity to relapse, and we see no convincing evidence in the record that he will not do so again.

{¶ 15} At the time of the hearing, respondent was not under the care of a physician or counselor, he did not zealously participate in A.A. or participate at all in OLAP, and, most unfortunately, he continued to consume alcohol. With the exception of the quanitity of alcohol consumed, these had also been respondent's circumstances prior to his most recent admission to a substance abuse program. Similarly, respondent continues to have no permanent address or sustaining income, both of which foster relapse.

{¶ 16} We realize that withholding respondent's license to practice law may exacerbate his economic situation and, correspondingly, reduce his chances for recovery. However, our primary obligation here is to protect the public. In furtherance of this duty, we order that respondent be indefinitely suspended from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.